EVARISTO RÍOS FONTÁNEZ, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, BAYAMÓN PART, F. GALLARDO DÍAZ, JUDGE, Respondent.

No. 2077. Argued June 1, 1954.—Decided August 9, 1954.

*Benigno Dávila* for petitioner. *José E. Bosch Roqué* for contestant.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Evaristo Ríos Fontánez filed a dominion title proceeding in the Bayamón Part of the Superior Court, requesting that the title to a certain property of 17.79 cuerdas located in the ward of Maná of Corozal be adjudicated in his favor. After the preliminary steps had been taken and the proper hearing held, and before decision was entered, Buenaventura Berríos, represented by a guardian *ad litem*, appeared by brief opposing the dominion title proceeding on the ground that a parcel of 7 cuerdas, which was part of the property of 17.79 cuerdas, belonged to the community partnership constituted by her and her husband José Alvarado Morales, and that since the opposing party was "deaf-mute by birth and cannot read or write, she never validly executed a deed or document having any legal value for the purpose of alienating the said 7 cuerdas, wherefore the extra-judicial

sale made by José Alvarado Morales to Antonio Flores was null and void, and likewise null and void the sale made by Antonio Flores to petitioner Evaristo Ríos Fontánez."

Petitioner Ríos Fontánez next filed a motion to strike out or dismiss Buenaventura Berríos' opposition. On December 18, 1953, the court of Bayamón entered an order dismissing the opposition filed by Buenaventura Berríos, but on January 8, 1954, the court, after hearing the parties, entered another order setting aside its order of December 18, 1954. On January 8, 1954, we issued a writ of certiorari to review the latter order.

 The question posed before this Court is whether in a dominion title proceeding, it is legally proper to present and entertain an opposition such as that filed in the instant case. Before passing on to a decision of the question, it is necessary to consider at the outset the intrinsic sufficiency of the reasons set forth in the petition.

The essence of the opposition is predicated on the allegation that petitioner's title in the dominion title proceeding is null and void on the ground that a previous conveyance of part of the property was void, because one of the vendors therein was incompetent to give her consent because she was a deaf-mute by birth and could not read or write. Section 1215 of our Civil Code provides as follows:

"Section 1215.—The following persons can not give consent:
"1. Minors who are not emancipated.
"2. Lunatics or the insane, *and the deaf and dumb who do not know how to write.*
"3. Married women, in the cases specified by law." (Italics ours.)

A legal precedent of the provision bearing on deaf-mutism is the Partida Fifth, Title XI, Law 2 (20 Scaevola 592), which provides as follows:

". . . . So we say if when he is questioned, he answers nothing, but only moves his head, or makes some other sign, not saying either yes or no, or any other words, then he contracts no obligation. For such an obligation as this, being con-

tracted by words only, cannot be by signs. And we therefore say that the deaf and dumb cannot obligate themselves or enter into engagements made in this way, for the dumb cannot ask a question or give an answer, nor can the deaf hear when he is questioned; although he may enter into other engagements that are contracted by mere consent."

By analogy, reference is made to deaf-mutism in other sections of the Civil Code. Section 25 provides in part that deaf-mutism is a restriction upon the civil capacity. Section 168 provides that the "Insane or demented persons, even though they have lucid intervals and the deaf and dumb who cannot read nor write", are subject to tutorship, since such persons, under § 167, are "incapable of governing themselves." (See also § § 180 to 186.) Section 950 provides that "Deaf mutes who know how to read and write shall accept or decline the inheritance in person, or by means of a representative in accordance with law. If they do not know how to read or write, their guardian shall accept it under benefit of inventory . . ." Section 630 provides in part that "those totally deaf and dumb" cannot be witnesses to wills. Section 659 provides that "The deaf and dumb and those who can not speak, but who are able to write, may execute a closed will" upon compliance with certain formalities.

Under § 1215 of the Civil Code, which deals with the lack of capacity to contract, deaf-mutism accompanied by illiteracy (as alleged in the instant case) constitutes an absolute mental incapacity, of a natural type, which renders altogether null and void the consent and the contract, since it involves the lack of real capacity to consent (8(2) Manresa 386, rev. 5th ed.; 2 Castán 601, rev. 6th ed.; 20 Scaevola 600, 601).[1]

---

[1] The doctrine of absolute mental incapacity of illiterate deaf-mutes has been the object of criticism, it being claimed that they could be made capable by special training aimed at restoring their mental faculties, but in any event the incapacity doctrine has nonetheless been adopted by our Civil Code. (29 *Enciclopedia Jurídica Española* 84–86.)

If the allegations contained in the opposition filed in the instant case by Buenaventura Berríos are true, the previous alienation of part of the property sued on would be altogether null and void. The opposition is therefore an attack on the intrinsic validity of petitioner's alleged title or dominion and a challenge to the essential validity of the acquisition of the property by the petitioner. The problem therefore narrows to a determination of whether such challenge should be decided within the dominion title proceeding itself, or in an independent plenary suit. This alternative presents another dilemma as to whether the act itself of the filing of such opposition alleging defects which render the title partially void, is sufficient to defeat or dismiss automatically the dominion title proceeding so that the matter may be decided in an ordinary action, or whether the dominion title proceeding may become a contested or plenary action, as is the case with contradictory entries in the registry (*Cf. Mercedes Rodríguez Figueroa* v. *Registrar*, 75 P.R.R. 669; *Bermúdez* v. *Registrar*, 74 P.R.R. 141; *Benítez* v. *Registrar*, 71 P.R.R. 526), or whether the proceeding should be suspended until the dispute is decided in an ordinary action.

In his work *Derecho Hipotecario*, Roca Sastre, Vol. 2, pp. 485, 496–97, advocates that the prosecution of the dominion title proceeding should be suspended until the corresponding declaratory plenary action is instituted or decided, in those cases where the objections are of a revendicatory nature. That solution might be effective under the existing legislation in Spain. But we prefer to maintain and to apply to this case the doctrine prevailing in Puerto Rico to the effect that, whenever there arises in a dominion title proceeding some controversy on the validity of the title or of the ownership rights of petitioner, such controversy shall be elucidated in the dominion title proceeding itself, in which case the latter ceases to be an ex parte proceeding and becomes a contested action. (*Mercedes Rodríguez Figueroa* v. *Registrar, supra; Bermúdez* v. *Registrar, supra; Benítez*

v. *Registrar, supra.*) This seems to be the most advisable judicial practice, since it avoids duplicity of proceedings and maintains the effectiveness of the dominion title proceeding.

The lower court acted correctly in admitting the opposition in the instant case, wherefore the writ issued will be discharged. It is to be noted, however, that, upon remand to the court of first instance, the dominion title proceeding will continue, being converted into a contested action.

The writ issued is quashed.